**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NANCY E. HAND,

       Plaintiff,

v.                                        CIV No. 14-485 CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff Nancy E. Hand's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum* (the "Motion"), filed on January 9, 2015, (Doc. 14); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* ("Response"), filed on June 9, 2015, (Doc. 22); and Plaintiff's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* ("Reply"), filed on June 25, 2015. (Doc. 23).

On August 17, 2010, Ms. Hand filed an application for supplemental security income and disability insurance benefits with the Social Security Administration, alleging disability beginning on June 30, 2008. (Administrative Record ("AR") 165–70, 171–76). Her application was denied on March 11, 2011, (AR 85, 86), and upon reconsideration on October 4, 2011. (AR 109, 110). Ms. Hand filed her request for a hearing on November 21, 2011, (AR 131–32); a hearing was held on November 9, 2012, before Administrative Law Judge ("ALJ") Karen Wiedemann. (AR 33–71). Ms. Hand and Nicole King, an impartial vocational expert, testified at the hearing. (*Id.*).

The ALJ issued her opinion on February 22, 2013, and determined that Ms. Hand

was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 15–27). Ms. Hand filed an application for review with the Appeals Council, which was summarily denied on March 21, 2014, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Hand complains that the ALJ committed reversible, legal error by failing to properly: (i) weigh the opinion of her social worker as to her mental limitations; (ii) consider all of her mental limitations; and (iii) consider the evidence of the exertional limitations caused by her knee impairment. The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not commit reversible legal error as alleged by Ms. Hand, the Court orders that the Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously

review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of her residual functional capacity

_____

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III.   Background

Ms. Hand applied for disability benefits alleging that she was disabled due to headaches, bipolar disorder, and problems with her right knee and leg. (AR 187).

At step one, the ALJ determined that Ms. Hand had not engaged in substantial gainful activity since June 30, 2011. (AR 17). At step two, the ALJ concluded that Ms. Hand was severely impaired with major depressive disorder, moderate and recurrent; dysthymic disorder; and polysubstance abuse in early remission. (AR 17–18). She also found Ms. Hand's knee problems and headaches to be non-severe. (*Id.*). At step three, the ALJ concluded that none of Ms. Hand's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 18–19).

The ALJ proceeded to step four, and first made a residual functional capacity ("RFC") finding that Ms. Hand could perform full range of work at all exertional levels, but assigned only non-exertional limitations. (AR 19–25). With regard to her non-exertional functional abilities, the ALJ determined she was: (i) capable of understanding and retaining simple and some complex instructions; (ii) able to persist at tasks at an appropriate pace and sustain this level across days and weeks; (iii) able to cooperate on simple, routine tasks and transactions; (iv) able to relate appropriately in spite of some mood depression; (v) limited to occasional public contact and occasional social demands; (vi) able to adapt to most changes and task demands on a sustained basis, avoid significant hazards, and arrange transportation; (vii) able to understand, retain, and

4

follow instructions; (viii) able to consistently and usefully perform routine tasks on a sustained basis with minimal normal supervision; (ix) able to cooperate effectively with completing simple tasks and transactions; and (x) able to adjust to the mental demands of new task settings. (*Id.*). The ALJ decided that Ms. Hand was precluded from doing any of her past relevant work in light of the RFC finding. (AR 26).

At step five, the ALJ inquired whether Ms. Hand would be able to perform any other work existing in significant numbers in the national economy. (AR 26–27). The ALJ noted that Ms. Hand was 45 years old on the alleged disability onset date, and classified as a "younger individual" in accordance with the Regulations. (*Id.*). The ALJ also determined that Ms. Hand had at least a high school education and English-language skills. (*Id.*).

The vocational expert testified at the hearing that an individual with Ms. Hand's same age, education, work experience, and RFC could perform the jobs of janitor and laundry folder. (AR 69). The vocational expert stated that those jobs existed in significant numbers in the national economy. (*Id.*). After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 27). The ALJ concluded that because Ms. Hand was capable of performing work existing in significant numbers in the national economy, she was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (*Id.*).

## IV.   Analysis

Ms. Hand contends that the ALJ committed error by formulating an RFC determination unsupported by the law, because the ALJ failed to properly evaluate her limitations caused by her mental and physical impairments. Specifically, Ms. Hand

argues that the ALJ improperly weighed and rejected the opinion of her social worker, Kathleen Slee, L.M.S.W. She also maintains that the ALJ failed to assess all of the non-exertional and exertional limitations that are supported by the record. The Commissioner responds that the ALJ properly evaluated Ms. Slee's opinion and that it was properly considered in her formulation of the RFC. The Commissioner further contends that the RFC finding is supported by substantial evidence and is not legally erroneous, and asks the Court to affirm the final decision denying disability benefits.

A.    _Law Regarding an ALJ's RFC Finding_

At step four, the ALJ considered Ms. Hand's impairments and their effects on her functioning, and then made an RFC finding. The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect her ability to work. _See_ 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); _see also_ Social Security Rulings ("SSR") 96-8p, 1996 WL 374184, at *1, 3 (July 2, 1996). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. _Id._ at *7.

The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history, medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. 96-8p, 1996 WL 374184 at *5, 7. The ALJ considers and evaluates the claimant's statements of her subjective complaints and descriptions and observations of her functional limitations, including pain and fatigue.

6

*See* 20 C.F.R. §§ 404.1529, 404.1545(e), 416.929, 416.945(e); *see generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ also takes into account any statements about what the claimant can still do that have been provided by medical and other sources, whether or not they are based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513, 416.913. Additional evidence from medical sources that are not "acceptable medical sources," and information from nonmedical sources, may also be used to evaluate the severity and functional effects of a claimant's impairments. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

B.       *Analysis of Ms. Slee's Opinion*

The ALJ considered the opinion of Ms. Slee, who was Ms. Hand's treating counselor, in making the RFC finding. The ALJ ultimately assigned it little weight for the reasons that Ms. Slee is not a an acceptable medical source for rendering a medical opinion and that the limitations she assessed were inconsistent with the record. (AR 24). Ms. Hand argues that Ms. Slee's opinion was improperly rejected, but the Commissioner contends that the ALJ permissibly evaluated and discounted it pursuant to the Regulations.

The record shows that Ms. Slee began treating Ms. Hand at Border Area Mental Health Services on a monthly basis beginning around July, 2010. (AR 320). On August 8, 2011, Ms. Slee completed mental assessments of Ms. Hand's ability to perform the non-exertional functions that work requires. (AR 265–71). Her opinion of Ms. Hand's limitations differs significantly from the ALJ's RFC. Ms. Slee found that Ms. Hand has marked limitations in the certain areas of understanding, memory, concentration and

7

persistence. (AR 267). She assessed moderate limitations in the areas of remembering locations and work-like procedures, carrying out very short and simple instructions, and maintaining attention and concentration for periods of time. (*Id.*). She additionally noted that Ms. Hand exhibits "significant impairments in memory," and needs frequent reminders and has missed appointments due to her memory impairment. (*Id.*). She further noted that Ms. Hand exhibits significant impairments in terms of maintaining focus and concentration in both short- and long-term memory. (*Id.*).

In the areas of social interaction, Ms. Slee found moderate limitations in Ms. Hand's ability to interact appropriately with the general public, ask simple questions or request assistance; and marked limitations in accepting instructions and responding appropriately to criticism, getting along with coworkers and peers, and maintaining socially appropriate behavior. (AR 268). She further opined that Ms. Hand had moderate limitations in her awareness of normal hazards, traveling to unfamiliar places, and setting realistic goals, and marked limitations in responding appropriately to changes in the workplace. (*Id.*).

Ms. Slee also reported that Ms. Hand had a "residual disease process" resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate. (AR 270). She found that Ms. Hand also had a history of spending at least one or more years unable to function outside a highly-supportive living arrangement, with an indication of continued need for such an arrangement. (*Id.*).

The ALJ considered Ms. Slee's opinion and gave it limited weight, for the reasons that Ms. Slee is not a practicing psychologist or psychiatrist and therefore not an

8

acceptable medical source, and because her opinion was inconsistent with the rest of the evidence in the record. (AR 24). Specifically, the ALJ found that Ms. Slee's progress notes showed that Ms. Hand had compliance issues and external stressors rather than any consistent mental findings, and that Ms. Slee's determination that Ms. Hand is unable to function outside a highly-supportive living arrangement to be negated by Ms. Hand's testimony that she lives alone. (*Id.*).

Ms. Hand argues that the ALJ impermissibly rejected Ms. Slee's opinion and treatment notes because the ALJ failed to properly evaluate them pursuant to the Regulations. First, Ms. Hand contends that the ALJ impermissibly rejected Ms. Slee's opinion for the reason that she is an unacceptable medical source. The Rulings make clear that opinions from non-acceptable medical sources, such as licensed clinical social workers, are important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p, 2006 WL 2329939 at *2. When considering what weight, if any, to afford a medical opinion or other evidence from such a source, the ALJ should consider the same six factors typically used to evaluate the weight of an acceptable medical source's opinion. *Id.* at *4. These factors include: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship; (iii) supportability of the opinion by reference to relevant evidence; (iv) how well the source explains the opinion; (v) the source's medical specialization; and (vi) any other factor which tends to support or refute the opinion. 20 C.F.R. §§ 404.1527(c) and 416.927(c); SSR 06-03p, 2006 WL 2329939 at *2–3.

The ALJ should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. SSR 06-03p, 2006 WL 2329939 at *6; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). This duty is commensurate with the ALJ's more generalized duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The Court therefore agrees with Ms. Hand's argument that the ALJ should have weighed Ms. Slee's opinion in consideration of the six factors described above. It was not proper to reject her opinion for the reason that she was not an "acceptable medical source." The Court will now turn to whether the second reason the ALJ gave—that Ms. Slee's opinion was inconsistent with other evidence in the record—was a proper reason for discounting her opinion outright.

The ALJ noted that when Ms. Hand initially presented to Border Area Mental Health, she had indicated that she recently stopped using methamphetamines and was attempting to stop her drug use and learn to cope with her symptoms. (AR 284). It was noted that Ms. Hand's symptoms, including depressed mood, fatigue, and insomnia, had been exacerbated by external circumstances and substance use. (AR 285). Ms. Slee's treatment notes show that in November, 2010, after four months of therapy, Ms. Hand presented as calm and with a stable mood, and was polite, cooperative, and motivated. (AR 326–27).

On December 8, 2010, Ms. Hand presented to Ms. Slee with complaints of anxiety. (AR 328–29). Ms. Slee stated her concerns were financial concerns, which led her to feel agitated and have a strong desire to use methamphetamine. (*Id.*). Ms. Slee began to introduce distress-tolerance skills to Ms. Hand. (*Id.*).

In January, 2011, Ms. Slee observed that Ms. Hand had shown significant improvement in controlling her symptoms of anger and aggression and had done well at applying anger-management skills in her daily life. (AR 335). In February, 2011, Ms. Hand reported she had relapsed twice, secondary to the stress of losing her housing assistance due to an assault conviction. (AR 342). The following month, Ms. Slee discussed Ms. Hand's magnified symptoms in terms of "external stressors." (AR 336). Further, after a month-long period of sobriety, Ms. Hand self-reported that her depressive symptoms had decreased in severity. (AR 364–66). Ms. Slee recommended that Ms. Hand attend Narcotics Anonymous or Alcoholics Anonymous and seek medication management to reduce symptoms, but Ms. Hand was not willing to do so at that time. (*Id.*). In June, 2011, Ms. Hand again reported being stressed about a variety of external stressors associated with finances. (AR 366).

Here the ALJ gave two reasons for rejecting Ms. Slee's opinion—that Ms. Slee is an unacceptable medical source and her opinion was inconsistent with evidence in the record. While the former is an impermissible reason for discounting Ms. Slee's opinion outright, the latter demonstrates that the ALJ evaluated Ms. Slee's opinion in consideration of at least once of the deference factors. The Court finds that the ALJ gave sufficiently specific reasons why she afforded limited weight to Ms. Slee's opinion and that her reasoning is supported by substantial evidence. Thus, Ms. Hand has failed to prove that the ALJ committed legal error when she weighed the opinion.

Ms. Hand also argues that Ms. Slee's opinion warrants a more restrictive RFC finding than the one the ALJ assigned, and that the ALJ erroneously considered certain medical evidence in applying the deference factors. Ms. Hand asks the Court to reweigh

11

the evidence and formulate a more restrictive RFC based on evidence that is more favorable to a finding of disability. The Court may only consider whether the ALJ followed the specific rules of law in weighing a medical source opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

For all of the foregoing reasons, the Court finds that the ALJ gave sufficiently specific reasons for the weight she assigned to Ms. Slee's opinions in consideration of the deference factors, and that her finding is supported by substantial evidence.

### C.    *The ALJ's RFC Finding*

Ms. Hand also argues that the ALJ erred in formulating the RFC because she failed to include all of the limitations supported by evidence in the record. Ms. Hand contends that the ALJ did not properly include in the RFC additional limitations that were assessed by a non-examining, State agency physician. The Commissioner responds that the ALJ did not err because Ms. Hand misconstrues that physician's opinion.

Michelle Butler, PsyD., completed a Mental Residual Functional Capacity Assessment ("MRFCA") on January 15, 2011. (AR 372–74). In Section I of Dr. Butler's MRFCA, titled "Summary Conclusions," Dr. Butler assessed that Ms. Hand had moderate limitations in her: (i) ability to accept instructions and respond appropriately to criticism from supervisors; and (ii) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 373). In Section III of her MRFCA, titled "Functional Capacity Assessment," Dr. Butler opined that Ms. Hand: (i) relates effectively with the public; (ii) that her interpersonal limitations are negligible and occur infrequently; (iii) can cooperate on simple, routine tasks and transactions; (iv) is

able to relate appropriately in spite of some mood depression; (v) may show limited

tolerance for frequent, recurrent contact with the general public; (vi) that she would

function best at tasks with modest social demands; and (vii) can consistently and usefully

perform routine tasks on a sustained basis with minimal supervision. (AR 374).

     The ALJ afforded Dr. Butler's mental health assessment significant weight for the

reason that it is consistent with the record as a whole. Accordingly, she adopted Dr.

Butler's findings into the RFC that Ms. Hand can cooperate effectively to complete and

undertake simple, routine tasks and transactions, is able to relate appropriately in spite

of some mood depression, she is able to consistently and usefully perform routine tasks

on a sustained basis with minimal normal supervision, and is limited to occasional public

contact and occasional social demands. (AR 19–20).

     Ms. Hand argues that the RFC did not include any of the limitations assessed by

Dr. Butler in Section I of her MRFCA. Ms. Hand contends that the ALJ erred by not

including these additional limitations in the RFC, and that she should have explained why

she implicitly rejected them while according the rest of Dr. Butler's MRFCA significant

weight. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

     The Tenth Circuit recently addressed this very issue in an unpublished decision.

*See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015)

(unpublished). In that case, the claimant argued that the ALJ failed to incorporate all of

the limitations assessed pursuant to a non-examining, State Agency's MRFCA, because

the Section I limitations were left out of the RFC but the Section III limitations were

included verbatim. The Tenth Circuit explained that the MRFCA's Section I "is for

recording summary conclusions derived from the evidence in the file and directs that

13

detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the provisions of the Social Security Administration's Program Operations Manual Systems ("POMS"), which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618–19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation ascribed in Section I must be described in narrative format in Section III. *Id.* at 619 (citing POMS DI 24510.063 B.2.).

Further, the Court explained that "[t]he POMS also provides that the discussion of all mental capacities and limitations in Section III must be in narrative format, and that Section III is for explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Carver*, 600 Fed. Appx. at 619 (quotations omitted). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224–25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11–cv–00333–WYD, 2012 WL 1044746, at *5–6 (D. Colo. Mar. 28, 2012) (unpublished)).

In applying these principles, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had moderate

limitation in being able to accept instructions and respond appropriately to supervisor criticism. *Carver*, 600 Fed. Appx. at 619. In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619–20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was "tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

In this case, in Section I of her MRFCA, Dr. Butler found that Ms. Hand had moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors. In Section III, Dr. Butler explained that Ms. Hand can consistently and usefully perform routine tasks on a sustained basis with minimal supervision. These facts are similar to those in *Carver*, a holding which is not binding on this Court but provides persuasive authority. The Court finds that, in consideration of the guidance provided in *Carver*, Dr. Butler's statement in Section III that Ms. Hand can consistently and usefully perform routine tasks with "minimal (normal) supervision" sufficiently describes her ability to accept instructions and respond appropriately to criticism from supervisors. The Court heeds the *Carver* Court's warning not to "parse the

15

ALJ's language too finely."

The Court next turns to Dr. Butler's Section I finding that Ms. Hand has a moderate limitation in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. In Section III, she assessed Ms. Hand as being able to cooperate on simple, routine tasks, and transactions, being able to relate appropriately, and having negligible interpersonal limitations. The Court finds that these assessments also adequately describe, in terms of social functioning, Dr. Butler's finding in Section I.

For these reasons, the Court concludes that Dr. Butler's narrative in Section III encompasses the Section I limitations, and that the Section III narrative represents the Section I limitations in a specific RFC finding. Therefore, the ALJ did not err in adopting Dr. Butler's opinion in her RFC determination.

D.    _Physical Limitations_

Last, Ms. Hand argues that the ALJ erred by failing to include any exertional limitations in her RFC, despite there being evidence in the record that she suffers from knee swelling and pain. Ms. Hand contends that the ALJ should have provided a function-by-function analysis of her physical RFC, instead of conclusorily finding that she could do a full range of work at any exertional level. The Commissioner responds that the ALJ appropriately determined that there was not sufficient evidence in the record to support any exertional limitations due to Ms. Hand's alleged knee impairment.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. "Only after that may [the] RFC be expressed in terms of the exertional

16

levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* at 1.

Here, the ALJ described Ms. Hand's self-reports of her functional abilities and limitations, in addition to the activities that she engages in, as well as the medical evidence bolstering and detracting from her claim of disabling functional limitations caused by her knee impairments.

First, the ALJ reviewed Ms. Hand's self-reports and subjective complaints concerning her symptoms she alleged were caused by her knee impairment. The ALJ noted that Ms. Hand testified that she was in a motor-vehicle accident in 2009 which she claims injured her right knee. (AR 47). She reported that she has to elevate her knee several times per day due to swelling, and is unable to walk more than three blocks before getting a burning sensation in her knee. (AR 47–48). She stated she can stand for only 15 minutes at a time, sit for thirty minutes at a time, and is unable to kneel with her right knee or squat. (AR 48).

At step two, the ALJ determined that Ms. Hand's knee problem was non-severe because a consultative, examining physician found that Ms. Hand had a full range of motion in her knee, was able to ambulate without apparent difficulty, and assessed no specific physical limitations resulting from her alleged knee impairment. (AR 397–99). The ALJ further noted that an x-ray of her knee taken on January 25, 2011 revealed that Ms. Hand's knee showed degenerative changes but no acute pathology. (AR 393, 395).

At step four, the ALJ found Ms. Hand to be not entirely credible regarding her subjective complaints of her symptoms.[1]  (AR 21). The ALJ also determined that the aforementioned objective medical evidence did not provide strong support for Ms.

---

[1]  Ms. Hand does not challenge the ALJ's credibility finding on appeal.

Hand's subjective complaints. (*Id.*). Further, the ALJ noted that a non-examining State agency physician also opined that Ms. Hand's physical impairments were non-severe because the degenerative changes of the right knee shown on the x-ray did not impose significant limitations that would prevent Ms. Hand from engaging in basic work activities. (AR 400).

The ALJ noted that, with the exception of Ms. Hand's own testimony regarding her exertional limitations, there was no other evidence in the record to support the existence of such significant limitations. A claimant cannot meet her burden by merely making subjective allegations; her statements about her symptoms alone cannot establish disability. *See* 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.928. Persuasive medical evidence is necessary to establish functional limitations and support a claim of disability. *Id.* The ALJ mentioned all of the evidence supporting more restrictive physical limitations, and then explained why that evidence was either not credible or not supported by the objective medical evidence in the record. Thus, the ALJ properly excluded those limitations from her RFC finding.

Moreover, it is true that an ALJ must discuss any uncontroverted evidence she chooses not to rely upon and significantly probative evidence that she rejects, in addition to the evidence supporting her decision. *See Clifton*, 79 F.3d at 1010. However, Ms. Hand has not identified any other uncontroverted or significantly probative evidence that the ALJ failed to consider that would support more restrictive limitations in the contested functional areas.

In her Reply, Ms. Hand asks the Court to reconsider the x-ray findings, which show joint space narrowing and marginal osteophytes in her right knee. (Doc. 23 at 10).

18

Ms. Hand contends that these are indicators of osteoarthritis of the knee. (*Id.*). The Court only considers whether the ALJ followed the specific rules of law considering the evidence in the record, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan*, 552 F.3d at 1185. In this case, several consulting physicians reviewed the x-ray evidence, and there is no medical diagnosis or opinion in the record that Ms. Hand suffers from osteoarthritis. The Court declines to interpret the x-ray findings on its own and make an independent determination that Ms. Hand is impaired by osteoarthritis of the knee.

Ms. Hand is incorrect that the ALJ failed to conduct an express analysis of her physical functional abilities due to her knee problems. Therefore, the ALJ's failure to find explicitly that Ms. Hand was capable to doing the required bending, walking, standing, and sitting during the workday was not critical to the outcome of this case. *See Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014). There is no requirement that an ALJ point to "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Where, as here, the Court can follow the ALJ's reasoning in conducting its review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012). The Court "must, exercise common sense," and "cannot insist on technical perfection." *Id.*

Thus, the Court finds that the ALJ sufficiently explained her RFC determination and supported her decision with substantial evidence.

V.      Conclusion

For all of the foregoing reasons, the Court concludes that the ALJ did not commit the errors alleged by Ms. Hand, or that any such error was harmless. In addition, the Court finds that substantial evidence supports all of the ALJ's determinations challenged by Ms. Hand.

**IT IS THEREFORE ORDERED** that Ms. Hand's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum*, (Doc. 14), be **DENIED** and that this cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE